UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Donna J. Fulkerson, | ) | |
|         Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 11-4031 |
| | ) | |
| Tompkins State Bank, | ) | |
|         Defendant | ) | |

**ORDER**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 USC. § 636(c), and the District Judge has referred the case to me. Now before the court is the Defendant's motion for summary judgment (#17). The motion is fully briefed and I have carefully considered the arguments and evidence submitted by the parties. As explained herein, the motion is DENIED.

**I. JURISDICTION AND VENUE**

This case arises under the Fair Labor Standards Act, 29 USC §215(a)(3). This Court has subject matter jurisdiction pursuant to 29 USC §216(b) and 28 USC §1331.

The events alleged in the complaint took place in Fulton and Knox Counties, Illinois, both of which are within this District and in both of which the Defendant does business. Venue in this District is therefore proper.

Pursuant to CD Ill Local Rule 40.1(A), this case is assigned to the Peoria Division of this District.

**II. SUMMARY JUDGMENT GENERALLY**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 US 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1016 (7th Cir 2000); *Cox v. Acme Health Serv.*, 55 F3d 1304, 1308 (7th Cir 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 US 242 (1986). The court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. *Waldridge v. American Hoechst Corp.*, 24 F3d 918, 922 (7th Cir1994). Summary judgment is not a substitute for a jury's determination about credibility. *Paz v. Wauconda Healthcare and Rehabilitations Centre*, 464 F3d 659, 664 (7th Cir 2006). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.

The court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, *Erdman v. City of Ft. Atkinson*, 84 F3d 960, 961 (7th Cir 1996); *Vukadinovich v. Bd. of Sch. Trustees*, 978 F2d 403, 408 (7th Cir 1992), cert. denied, 510 US 844 (1993); *Lohorn v. Michal*, 913 F2d 327, 331 (7th Cir 1990); *DeValk Lincoln-Mercury, Inc. V. Ford Motor Co.*, 811 F2d 326, 329 (7th Cir 1987); *Bartman v. Allis Chalmers Corp.*, 799 F2d 311, 312 (7th Cir 1986), cert. denied, 479 US 1092 (1987), and construing any doubts against the moving party. *Adickes v. S.H. Kress & Co.*, 398 US 144 (1970); *Trotter v. Anderson*, 417 F2d 1191 (7th Cir 1969); *Haefling v. United Parcel Serv., Inc.*, 169 F3d 494, 497 (7th Cir1999).

If the undisputed facts indicate that no reasonable jury could find for the party opposing the motion, then summary judgment must be granted. *Hedberg v. Indiana Bell Tel. Co.*, 47 F3d 928, 931 (7th Cir 1995), citing *Anderson*, 477 US at 248. If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party and on which that party will bear the burden of proof at trial, then summary judgment is proper. *Celotex*, 477 US at 322; *Waldridge*, 24 F3d at 920.

A court may consider only admissible evidence in assessing a motion for summary judgment. *Gunville v. Walker*, 583 F3d 979, 985 (7th Cir 2009); *Haywood v. Lucent Technologies, Inc.*, 323 F3d 524, 533 (7th Cir 2003) (inadmissible evidence will not overcome a motion for summary judgment). See also *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F3d 560, 562 (7th Cir 1996) (evidence relied upon at the summary judgment stage must be competent evidence of a type otherwise admissible at trial). A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment. *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F3d 651, 656 (7th Cir 2011); *Logan v. Caterpillar, Inc.*, 246 F3d 912, 925 (7th Cir 2001) (inadmissible hearsay is not enough to preclude summary judgment); *Eisenstadt v. Centel Corp.*, 113 F3d 738, 742 (7th Cir 1997) (hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial); *Bombard*, 92 F3d at 562 (inadmissible hearsay from an affidavit or deposition will not suffice to overcome a motion for summary judgment).

### III. UNDISPUTED FACTS

The following statement of fact is taken from the Defendant's statement of fact, the Plaintiff's response thereto and statement of additional facts, and the Defendant's reply to Plaintiff's additional facts.

In 1998, the Community Bank of Galesburg hired Donna Fulkerson. The Bank's president was Patrick Blake. In 2008, the Community Bank became part of Tompkins State Bank, an Illinois State Bank Institution ("Tompkins"), and Blake became the manager of the Galesburg branch of Tompkins. In addition to its location in Galesburg, Tompkins had branches in Avon, Abingdon, and Knoxville, Illinois, as well as a Data Center in Avon.

Fulkerson's primary job responsibility was as a proof operator. Her supervisor was JoAnn McElrea, who was Vice President of Data Processing for Tomkins until she retired in March of 2010. McElrea worked primarily at the Avon Data Center.

After the Community Bank of Galesburg became part of Tompkins, Fulkerson (who lives in Avon, Illinois, and served as the village treasurer at all pertinent times) added courier-type duties to her daily tasks. At all times, she used her own personal vehicle for these duties and was reimbursed for mileage.

She began her work days by punching a time clock at the Data Center in Avon where she picked up documents. She would then drive to the Avon branch bank, picking up more documents. After leaving Avon, she then drove to the Galesburg branch, where she proofed Tomkins' daily transactions. The trip from Avon to Galesburg took about 25-30 minutes.

At about 3:30 in the afternoon, she would leave the Galesburg branch, taking with her anything that needed to go to the Avon Data Center. On her way to Avon, she would meet an employee from the Bank's Knoxville branch near County Route 10 and Route 41, receiving any Knoxville documents that were to go back to Avon. She then stopped at the Abingdon branch along the way, picking up their daily transactions. She then proceeded to Avon, where she spent between 15 and 30 minutes proofing the Knoxville work. She then punched out for the day.

Adding the courier duties to her proofing duties meant that Fulkerson worked overtime every week. Her time cards for January and February 2010 show that she worked, on a weekly basis, 50.5 hours, 44.57 hours, 41.02 hours, 40.58 hours, 43.1 hours, 44.05 hours, 41 hours, 41.35 hours, and 41.25 hours.

In January of 2010, Tomkins changed its proofing procedures to a "remote capture" method. This altered the type of documents Fulkerson transported between the branches and eliminated the requirement for her to do any proofing at Avon. In a meeting on January 15, Blake told Fulkerson that the courier arrangements would change and that she would thereafter work a 40 hour work, Monday through Friday. Thereafter, Fulkerson's only responsibility with respect to the branches at Avon, Abingdon, and Knoxville was acting as courier. In addition, Blake told her that she would no longer be reimbursed for mileage expenses.

Fulkerson responded that she did not want to do the bank's business in her personal vehicle if she was paying for her own gas and paying higher insurance rates. She asked to be assigned the Bank's van for her courier duties, but Blake denied her request. He told her to think about the changes over the weekend. There were several follow up conversations during the following week, and on January 22, Fulkerson told Blake she would continue to handle the courier duties.

Between February 27, 2010 and April 6, 2010, Fulkerson was on medical leave. In her absence, Michelle Hall performed the courier duties. Hall would clock in at Galesburg, take the Bank's van and make a morning run to Knoxville, Abington, the Data Center, the Avon Branch Knoxville and then back to Galesburg. According to Hall, it took her about one hour and 40 minutes to do the entire trip. She also testified that if she was doing courier duties, she was always on the clock, and if she had to use her own car for some reason, she was paid mileage.

On April 27, 2010, Fulkerson received an email from Blake. This email read:

> Donna, our agreement concerning your time card was you were to punch in each morning at Avon and punch out at Galesburg each evening with and [sic] additional 30 minutes drive time added to your card each day. I understand you are punching out at Avon each evening. Please begin punching out at Galesburg beginning today."

Fulkerson spoke with him later that day. Fulkerson asked Blake if she could perform the courier duties in the same way that Hall had, namely come to Galesburg and clock in and then take the Bank's van to make a courier run. Blake denied that request. After the rest of their conversation (the substance of which is disputed; see below), Fulkerson punched out for the day, going directly home and leaving all documents in Galesburg. The next morning, Fulkerson punched in at the Avon branch and drove to the Galesburg branch. Blake, who had determined that she was insubordinate for leaving the previous day without the courier work, terminated her employment.

This is the big picture of what occurred. Many details are disputed. For example, prior to January 15, 2010, Fulkerson had begun traveling to the Knoxville branch to pick up their documents, rather than meeting the employee on the highway, a change that added additional time to her courier duties; according to Fulkerson, the actual drive time was about 45 minutes, in addition to the time spent actually getting the documents from inside the Knoxville branch and returning to her car. The parties dispute whether McElrea requested this change and whether Blake was aware of this change when he and Fulkerson spoke in January. He agrees that he learned of this "sometime after January", while Fulkerson asserts that she told him of this during their conversations on January 15. During the January conversations, they also dispute whether Blake told Fulkerson that her job was on the line. Fulkerson says she was told that if she did not continue to do the courier job with the changes he had outlined, they would hire someone else. Blake denies this part of the conversation.

The parties also dispute the substance of the April 27 conversation between Blake and Fulkerson. Most importantly, they dispute whether Fulkerson told him specifically that she was not going to perform the courier duties at the end of that day. Fulkerson's version of the conversation is that she stated that "this isn't right," explaining that the courier duties took longer than 30 minutes, while Blake denies that he received any such information from Fulkerson during that conversation. Fulkerson also claims to have told Blake that she would go ahead and clock out in Galesburg as he requested, but that she would not perform courier duties if she was clocked out. As she put it, "when I clock out I'm on my time and would be going home." Blake denies that this statement was made.

At the summary judgment stage, these disputes must, of course, be resolved in Plaintiff's favor. I therefore assume, for purposes of this motion only, the truth of the following facts: that Blake and McElrea were aware that Fulkerson was traveling to Knoxville, and that she was authorized to do so; that Fulkerson protested to Blake about his plan to add 30 minutes of time to compensate her for her courier duties, rather than the actual time it took for these duties; and that Blake did threaten her job during the January 15 conversation.

## IV. DISCUSSION

Plaintiff filed this lawsuit on April 21, 2011. She alleges violation of the Fair Labor Standards Act, 29 USC 215(a)(3) ("FLSA"). In her complaint, she asserts that her statements to Blake on April 27, 2010 constituted the filing of a complaint under the FLSA, and that her termination occurred because she orally complained to Blake about being required to work off the clock and about not being compensated for the time she actually worked. Tompkins answered the

Complaint, denying the material allegations and raising the affirmative defense of failure to mitigate damages.

The FLSA makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint..." 29 USC § 215(a)(3). To establish a claim under § 215(a)(3), a plaintiff has the burden of demonstrating that her employer engaged in retaliatory conduct, either through the direct or indirect method of proof. *Cichon v. Exelon Generation Co., L.L.C.*, 401 F3d 803, 810 (7th Cir 2005), citing *Scott v. Sunrise Healthcare Corp.*, 195 F3d 938, 940 (7th Cir1999).

Under the direct method, there must be evidence to show that (1) Plaintiff engaged in protected expression; (2) she suffered an adverse employment action; and (3) a causal link existed between the expression and the adverse action. *Scott*, 195 F3d at 940, cited in *Walters v. Cent. States Coca-Cola Bottling Co.*, 51 F. App'x 969, 970-71 (7th Cir 2002); *Shadduck v. United Parcel Serv., Inc.*, 2011 WL 4452210 (ND Ill).

A plaintiff may also proceed indirectly under the familiar burden shifting method. She must first produce evidence in support of each of the elements of a *prima facie* case, namely that (1) she was engaged in statutorily protected activity; (2) she was performing his job according to his employer's legitimate expectations; (3) she suffered a materially adverse action by his employer; and (4) she was treated worse than a similarly situated employee who did not engage in statutorily protected activity. *Scaife v. Cook County,* 446 F3d 735, 739 (7th Cir 2006); *Cichon,* 401 F3d at 811-12; *Marchman v. Advocate Bethany Hospital*, 2006 WL 1987815 (ND Ill). If a prima facie case is presented, the employer must articulate a non-retaliatory reason for the adverse action; *Scaife*, 446 F3d at 739. Plaintiff must then produce evidence of pretext. *Id.*

For a period of time, it was not clear whether the statutory phrase "filed any complaint" included making an oral complaint. The Supreme Court has resolved that doubt.

> To fall within the scope of the anti-retaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met, however, by oral complaints, as well as by written ones.

*Kasten v. Saint-Gobain Performance Plastics Corp*, 131 S Ct 1325, 1335 (2011). Since *Kasten*, courts have been consistent in viewing the substance of an employee's complaints - written or oral - to an employer in determining whether the employee was protected by § 215(a)(3). See, for example, *Shadduck v. United Parcel Services, Inc,* 2011 WL 4452210 (ND Ill).

Defendant asserts first that Fulkerson's conversations with Blake do not meet the standard for protected speech under FLSA. Tompkins interprets the facts as showing that Fulkerson's conversations with Blake concerned "working off the clock" and it is only in response to this motion for summary judgment that she has mentioned overtime. According to Tompkins, Fulkerson has altered her theory of the case "from time clocks to overtime" in order to bring her claim under FLSA.

That is incorrect. In Plaintiff's description of the two crucial conversations with Blake, it is clear that she was not simply complaining about working "off the clock." She was concerned that she was not being paid for the length of time it took her to complete her courier duties, and regardless of whether she used the word "overtime", it was her accumulation of overtime hours that brought this situation to a head. That was the undisputed impetus for the conversation in January, where her workday was defined as changing to a 40 hour week, as opposed to the longer weeks she had been working. Elimination of her overtime was also the goal of the April 27 conversation, where

Blake told her that she would have to punch out at 3:30 and have 30 minutes manually added to her time.

As a general rule, it is not fatal for a plaintiff to change her theory of the case midstream. As the Seventh Circuit has stated, "[h]aving specified the wrong done to [her], a plaintiff may substitute one legal theory for another without altering the complaint."*Ridings v. Riverside Medical Center*, 537 F3d 755, 764 (7th Cir 2008); quoting *Albiero v. City of Kankakee*, 122 F3d 417, 419 (7th Cir1997). Here, however, it is not really accurate to say that Fulkerson has changed her theory, which has always been and it remains that her employment was terminated in retaliation for the complaints she made about how she would be paid for the time she spent completing her courier duties. The question whether her complaints to Blake related to overtime is a question that is definitely one of the disputed matters. If the factfinder believes the facts as Blake articulates them, her failure to use the word overtime may be problematic, because Fulkerson will have the burden at trial of showing that she complained in a clear enough fashion for the employer to understand that she was asserting rights under FLSA. That is not an issue that can be resolved on summary judgment, however, because it requires resolution of credibility between Fulkerson and Blake.

For purposes of this motion, however, her oral complaints as she describes them - that this "wasn't right" and that it took her longer than 30 minutes to perform her duties - were sufficiently clear to give notice to Blake and hence to Tompkins that she was asserting rights that are protected by FLSA, namely her right to be paid overtime for about 1 hour and 15 minutes per week. This is especially true in the context of Blake's admitted concerns about her overtime hours. This satisfies the first prong of both the direct and indirect methods of proof.

The second prong of the direct method is not disputed; termination of her employment was indisputably an adverse employment action. That leaves the causal connection. Tompkins argues that she cannot prove the requisite causal link because she relies exclusively on "the coincidence of time" as her evidence. While it may be the general rule that suspicious timing, without more, is insufficient to establish causation, there is an exception when the adverse employment action occurs "on the heels of protected activity." Under that circumstance, timing is sufficient indirect (or circumstantial) evidence of retaliation. *Scott,* 195 F3d at 941; *Ridings v. Riverside Medical Center*, 537 F3d 755, 774 (7th Cir 2008).

Here, resolving questions in favor of Fulkerson, she has asserted that on April 27, she engaged in protected expression about overtime and stated her refusal to perform courier duties if she was not going to be paid for doing so. The next morning, based on her failure to perform courier duties the night before, she was fired. Her termination occurred on the heels of what may have been protected expression, and it was directly related to that protected expression, assuming of course Fulkerson's description of that expression. For purposes of this motion, she has shown a causal link.

She has therefore put forth sufficient evidence to go forward on her claim with direct evidence. She also asserts that she can succeed using the indirect method. Tompkins disputes that, asserting that her unsatisfactory work performance defeats her *prima facie* case. Unfortunately, at this stage of the proceedings, Tompkins evidence in support of this claim is largely hearsay. The evidence is what others told McElrea or Blake. The only other evidence is Blake's testimony that he was dissatisfied with her work. While that testimony may be "undisputed," as he claims, his dissatisfaction was directly related to her asserted refusal to work overtime without pay. That is the very purpose of FLSA: to prevent employers from holding the hammer of termination over an

employee in order to force unpaid labor in excess of 40 hours per week. That is a prohibited basis for dissatisfaction with an employee's work, and does not suffice to support the argument that her performance was unsatisfactory.

Similarly, the dispute about the substance of the conversation on April 27 between Fulkerson and Blake is sufficient to defeat Tompkins argument that Fulkerson cannot show pretext. This is true for two reasons. First, in order to reach the question of pretext, Tompkins must articulate a legitimate, non-retaliatory reason for her termination. If in fact Blake terminated her employment because she refused to work overtime without compensation, then his stated reason for her discharge - "insubordination" - fails as a matter of law. It cannot be insubordination to terminate an employee who refuses to be forced into unpaid overtime. Hence the pretext issue need not even be reached.

This same dispute of fact applies to the pretext analysis itself. It is disputed whether Fulkerson complained on more than one occasion about Blake's efforts to have her work her courier duties - which involved overtime - without full pay. It is actually undisputed that Blake was motivated by a concern about her accumulation of overtime hours. Under these circumstances it cannot be said as a matter of law that Blake's articulation of the reason for discharging Fulkerson was not pretextual.

Running throughout Tompkins' briefing is the assumption that Fulkerson's own testimony is insufficient to create a dispute of material fact. That is not the case. A plaintiff can defeat summary judgment with her own deposition. *Paz v. Wauconda Healthcare and Rehabilitation Centre*, 464 F3d 659, 664 -665 (7th Cir 2006); *Williams v. Seniff*, 342 F3d 774, 785 (7th Cir 2003); *Payne v. Pauley*, 337 F3d 767, 771-73 (7th Cir 2003)(evidence presented in a "self-serving" affidavit or deposition is enough to thwart a summary judgment motion provided it meets the usual

requirements for evidence at summary judgment stage); *Winskunas v. Birnbaum*, 23 F3d 1264, 1267 (7th Cir1994) (plaintiff can present deposition testimony demonstrating the existence of a genuine issue of material fact to ward off the grant of summary judgment). Much of the material that Defendant states is "undisputed" is in fact disputed - by Fulkerson herself. Where she has testified about conversations that she was part of, for example, her recall of those conversations is entitled to the same level of credibility as is Blake's or McElrea's. In fact, at the summary judgment stage, this Court accords her recollections with more credibility.

For all of these reasons, I conclude that Fulkerson's evidence is sufficient to defeat summary judgment as to the indirect method as well.

## V. CONCLUSION

For the reasons stated herein, the Defendant's motion for summary judgment is DENIED. This case remains set for a final pretrial conference on October 17, 2012, at 2:15 p.m., and for jury trial on November 13, 2012 at 9:00 a.m., both in Rock Island. An agreed final pretrial order, with all attachments and exhibits required by Local Rule 16.1(F), shall be filed on or before October 12, 2012. Any motions in limine shall be filed before the final pretrial conference.

ENTER this 1st day of October, 2012

s/ John A. Gorman

JOHN A. GORMAN

UNITED STATES MAGISTRATE JUDGE